AD TWO, INC. d/b/a The Coffee Beanery; Airport Concessions, Inc.; Airport Services, Inc. d/b/a Quizno's and Peaberry Coffee; GRD & D, Inc. d/b/a Boyers Gourmet Coffees; Laura De Varona d/b/a Varona Imports (Colorado Colors); Dick & Jane Pizza, Inc. d/b/a Domino's Pizza; First Class Baggage Co., f/k/a Golden Eel Import Co. of Colorado; Kellen Industries, Inc. d/b/a Rocky Mountain Chocolate Factory; Kellen Industries, Inc. d/b/a The Studio; Danny A. Lopez, III d/b/a Roger's Top Cone; Mission Yogurt, Inc. d/b/a Penguin's Harvest Express; The Three Chocolatiers, Inc. d/b/a Stephany's Chocolates; Trugoy, Inc. d/b/a TCBY Yogurt; Susan Vale, Inc.; and Lauren K. Wahlstrom d/b/a Colorado Collection, Plaintiffs–Appellants,

v.

The CITY AND COUNTY OF DENVER, by and through the Manager of Aviation; and James C. DeLong, Manager of Aviation, City and County of Denver, Defendants–Appellees.

No. 97CA1474.

Colorado Court of Appeals, Div. V.

Feb. 4, 1999.

Rehearing Denied March 4, 1999.

Certiorari Granted Sept. 13, 1999.

Hochstadt, Straw & Strauss, P.C., Richard S. Strauss, Denver, Colorado, for Plaintiffs–Appellants.

Daniel E. Muse, City Attorney, Helen Eckardt Raabe, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge MARQUEZ.

Pursuant to C.R.C.P. 106(a)(4), plaintiffs, concessionaires at Denver International Airport (DIA), seek review of an order affirming a determination by a hearing officer that their Concession Agreements (agreements) with the City and County of Denver (City) required them to retain an independent certified public accountant (CPA) to issue an opinion as to the accuracy of their revenue statements. We affirm.

In 1993 and 1994, plaintiffs entered into agreements with the City to operate concessions at DIA. In late 1994, plaintiffs recognized that the agreements contained a provision which required them to submit to the City each year a statement of total revenue and business transacted for the calendar year prepared and certified to be true and correct by an independent certified public accountant.

The contractual provision at issue in relevant part provides:

Not later than February 28 of each and every year during the Term hereof, Con-

cessionaire shall furnish to City a true and accurate statement of the total of all revenues and business transacted during the preceding calendar year (showing the authorized deductions or exclusions in computing the amount of such Gross Revenues and business transactions). Such statement shall be *prepared and certified to be true and correct by an independent certified public accountant.* Such statement shall be furnished for every calendar year in which business was transacted under this Agreement during the whole or any part of the year. (emphasis added)

Plaintiffs sought clarification from DIA personnel, and after contacting the City's Attorney's office, Denver's manager of aviation issued a letter on April 5, 1996. He informed the concessionaires that the phrase " 'certified to be true and correct by an independent certified public accountant' means or will be satisfied by, a report from an independent CPA after the CPA has audited the statement of revenues and business transacted." The letter also indicated that it was unacceptable to submit annual statements signed by an officer of the company certifying the sales reported to the City, and that tenants who could demonstrate extraordinary economic hardship should explain their circumstances to the internal auditor of the City.

Believing the costs of such audits to be prohibitive, plaintiffs petitioned for an administrative hearing. After receiving an adverse ruling, plaintiffs sought review in the district court pursuant to C.R.C.P. 106(a)(4) challenging the hearing officer's interpretation of the agreements. Plaintiffs now seek review of the court's order affirming that ruling.

## I.

The plaintiffs contend that, contrary to the hearing officer's ruling, the language in the agreement is ambiguous because it requires "certification" rather than an "audit report." This contention is based on the assertions that a CPA can only provide a compilation, a review, an agreed-upon procedures report, and an audit report, and the agreement does not state what is required if a CPA cannot provide the required certification. Plaintiffs further assert that a CPA cannot certify that the annual statements of revenue are true and correct and that such certification is precluded by law. We conclude that the agreements are not ambiguous.

■ Appellate review under C.R.C.P. 106(a)(4) is limited to consideration of whether any governmental body or officer has exceeded its jurisdiction or abused its discretion. *Regents of University of Colorado v. City & County of Denver,* 929 P.2d 58 (Colo. App.1996). Under this standard, we review the record to ascertain whether there is any competent evidence to support the hearing officer's decision. *Getsch v. Hawker,* 748 P.2d 1304 (Colo.App.1987).

■ However, contract interpretation is a question of law and may be reviewed *de novo. City of Englewood v. Commercial Union Assurance Cos.,* 940 P.2d 948 (Colo.App. 1996)(cert. granted July 28, 1997).

■ A court's duty is to interpret a contract in a manner which effectuates the manifest intention of the parties at the time the contract was signed. *Roemmich v. Lutheran Hospitals & Homes Society,* 934 P.2d 873 (Colo.App.1996).

■ Whether a contractual provision is ambiguous is a question of law, *Fire Insurance Exchange v. Rael,* 895 P.2d 1139 (Colo. App.1995), and reviewing courts are not bound by a trial court's decision on the ambiguity of a contract. *Cheyenne Mountain School District No. 12 v. Thompson,* 861 P.2d 711 (Colo.1993).

■ A written instrument is ambiguous when it is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of a term. *In re Trusts Created by Ferguson,* 929 P.2d 33 (Colo.App.1996). Yet, a mere disagreement between the parties as to the interpretation of an agreement does not in itself create an ambiguity as a matter of law. *Union Rural Electric Ass'n v. Public Utilities Commission,* 661 P.2d 247 (Colo.1983).

■ To ascertain whether certain provisions of a contract are ambiguous, the language used therein must be examined and

construed in harmony with the plain and generally accepted meaning of the words employed and by reference to all the parts and provisions of the agreement and the nature of the transaction which forms its subject matter. *Cheyenne Mountain School District No. 12 v. Thompson, supra.*

■ Here, the language in question is found in a clause entitled "BOOKS OF ACCOUNT AND AUDITING." Although the agreement uses the term "certified" instead of "audit," the hearing officer relied on a dictionary definition which defines "certify" as meaning, in part, "to attest authoritatively . . . to present in formal communication, to attest as being true or as represented or as meeting a standard." *See City of Englewood v. Commercial Union Assurance Cos., supra* (definitions in a recognized dictionary may be considered to determine the plain and ordinary meaning of words).

Here, as the hearing officer concluded, the plain and ordinary meaning of the language at issue requires that plaintiffs' revenue statements be reviewed by an independent certified public accountant and that the accountant provide an independent statement as to the accuracy of that information. In our view, the agreement simply seeks confirmation or assurance from an independent certified public accountant that the information provided is free from material error.

Further, the meaning of "certify" and the title of the clause are consistent with a requirement for an audit. *See City of Ouray v. Olin,* 761 P.2d 784 (Colo.1988)(title of legislation is relevant to the determination of legislative intent).

Thus, the use of these terms does not create uncertainty or ambiguity as to the requirement that an audit be conducted.

### II.

■ Pointing to the cost of an audit, which they assert could run between $3,000 and $20,000, plaintiffs contend that the agreement is commercially impracticable to perform and that submission of their own certifications that their revenue statements are correct would fulfill the contract requirement. The City, however, argues that allowing the owners to certify the correctness of their own revenue statements defeats the purpose of having an independent third party review and deprives the City of assurances provided by such a review. We agree with the City.

The hearing officer found that the contracts were not impracticable to perform because the requirement for independent review by a certified public accountant should reasonably have led the plaintiffs to contemplate that they would have to provide assurance that their financial statements were correct.

Here, the record reveals that 13 other concessionaires at DIA submitted opinion letters with their annual statements that complied with the provision of the agreements here at issue. Further, the terms at issue were in the agreements when plaintiffs signed them. Although one of the plaintiffs was concerned about the provision, plaintiffs made no attempts to clarify its meaning with the City prior to signing.

■ While an independent audit may increase the cost of doing business at DIA, a decrease in the value of the bargain cannot provide an excuse for non-performance. *Ruff v. Yuma County Transportation Co.,* 690 P.2d 1296 (Colo.App.1984).

Accordingly, the hearing officer correctly concluded that the agreements are not impracticable to perform.

### III.

■ Claiming that the requirement for an independent audit is unnecessary to fulfill any purpose of the City, plaintiffs further assert that the challenged provision of the contract is not a material part thereof and that, therefore, the City never intended to require independent audited annual statements. We reject plaintiffs' assertion.

Plaintiffs cite no authority in support of their argument. By the terms of their agreement, they are required to submit monthly statements. Their rent is based upon a guaranteed minimum, plus a percentage of the gross revenues over a specified minimum amount and is paid monthly.

While they assert that the requirement of an annual audit conducted by an independent CPA is redundant and cumulative, adoption of plaintiffs' interpretation that the clause is not material would defeat the purpose of having an independent CPA review the statements, *see Roemmich v. Lutheran, supra,* and would render the provision meaningless. *See Union Rural Electric Ass'n v. Public Utilities Commission, supra.*

Thus, the hearing officer properly rejected plaintiffs' assertions.

## IV.

Plaintiffs' final contention is that the trial court erred in finding that the agreements were not adhesion contracts. In support, plaintiffs assert that they had no opportunity to negotiate any of the terms of the agreements prior to their signing or during the operation of the task force. They also claim that there was an economic urgency to be located in DIA and that their airport retail and food and beverage services could not be obtained elsewhere. Again, we perceive no error.

■ An adhesion contract is a contract drafted unilaterally by a party and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere. Whether a contract is an adhesion contract is a question of law. *Jones v. Dressel,* 623 P.2d 370 (Colo.1981).

■ Even though a contract is a printed form contract and offered on a "take-it-or-leave-it" basis, these features alone do not define adhesion contracts. *Clinic Masters, Inc. v. District Court,* 192 Colo. 120, 556 P.2d 473 (1976). Rather, there must be a showing that the parties had greatly disparate bargaining power or that there was no opportunity for negotiation. *Jones v. Dressel, supra.*

■ Furthermore, an adhesion contract is not created where the only conduct by a party was to use its superior bargaining position to protect its investment by requiring protective terms in the contract. *Batterman v. Wells Fargo Ag Credit Corp.,* 802 P.2d 1112 (Colo.App.1990).

Here, the record reveals that a number of the principals of the plaintiffs were CPAs or former CPAs, attorneys, or experienced business persons.

Before the hearing officer, the airport's property officer testified that prior to the signing of the agreements, negotiations were possible and did take place. In fact, a concessionaire and several companies operating at DIA were able to eliminate from their contracts the requirement for a certified statement by a CPA.

■ The airport's property officer further testified that the agreements were not offered on a take-it-or-leave-it basis, were part of a voluntary process, and were put out by public proposal. Additionally, he indicated that, after the opening of DIA was delayed, concessionaires participated in task force meetings where they could present any matter of concern and nothing was excluded. During this process, many concessionaires, including some of the plaintiffs, requested and received amendments to their agreements.

The City's airport finance manager also testified that, as a result of the negotiations process, certain concessionaires were not required to submit certified annual statements signed by a CPA and did not have the language challenged here in their agreements.

Although plaintiffs may have perceived that the City was unwilling to negotiate terms of the agreements, evidence of a willingness to negotiate and bargain demonstrates that the agreements were not adhesion contracts. *See Jones v. Dressel, supra.*

Accordingly, the order is affirmed.

Judge RULAND and Judge BRIGGS concur.