**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 6 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EDDIE STEWART,

       Plaintiff - Appellant,

vs.

ADOLPH COORS COMPANY, a
Colorado corporation and COORS
BREWING COMPANY, a Colorado
corporation,

       Defendants - Appellees.

No. 99-1242

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 97-B-1467)

David Lichtenstein, Denver, Colorado, for Plaintiff - Appellant.

K. Preston Oade, Jr. (and Monica M. Márquez, with him on the briefs), Holme,
Roberts & Owen, LLP, Denver, Colorado, for Defendants - Appellees.

Before **BALDOCK**, **KELLY**, and **BRISCOE**, Circuit Judges.

**KELLY**, Circuit Judge.

      This case requires us to examine the grant of a 50(b) motion for judgment

as a matter of law in favor of an employer, after an adverse verdict on claims of

race discrimination.  We affirm.

Background

Eddie L. Stewart, an African-American, was hired by Defendant Coors Brewing Company ("Coors") in 1970 and worked continuously for the company until he was laid off in 1996.  During that time, Mr. Stewart was employed primarily in construction and the Fabrication Services department ("the fab shop").  The workers in the fab shop were supervised by several front-line supervisors, who reported to the manager, Harold Wheeler.  Mr. Wheeler, in turn, reported to the director Jay Martine.

Mr. Stewart worked his way up from a Class B Welder in 1971 to a multi-craft specialist – the highest skill classification – in 1987.  In May 1992, the multi-craft specialist position was eliminated as part of a Coors' reduction in force.  Mr. Stewart, along with the other multi-craft specialists, was bumped down to the position of metalworker helper.  Two to three months later, Mr. Stewart was assigned to work in the electropolish area of the fab shop.  This decision was made by Mr. Wheeler and by Darrell Sielsky, the electropolish area supervisor.  Workers in the electropolish area used cranes to lower stainless steel parts into large acid bath tanks containing electrical current in order to remove impurities from the metal components.  Mr. Stewart continued to work in the

electropolish area until he was laid off in April 1996. Although Coors policy provided for recall rights within one year of being laid off, Mr. Stewart opted to waive those rights in exchange for cash payments of supplemental unemployment benefits.

On March 20, 1996, Mr. Stewart filed a charge of race discrimination with the EEOC. He filed the current action in district court on July 7, 1997 alleging that Coors violated Title VII and 42 U.S.C. § 1981 by subjecting him to different terms and conditions of employment (Claim One), and by not promoting him (Claim Two) because of his race. Mr. Stewart also brought three state law claims: breach of implied contract (Claim Three); promissory estoppel (Claim Four); and breach of express contract (Claim Five). 1 Aplt. App. at 13-22 (Third Amended Complaint). Both parties moved for summary judgment on various of the claims: Coors on Claims One through Four, and Mr. Stewart on Claim Five.

In a December 14, 1998 order, the district court granted summary judgment to Coors on Claims Two, Three and Four and partial summary judgment on Claim One, limiting the charges of race discrimination to Mr. Stewart's assignment to the electropolish area. See 1 Aplt. App. at 395. The court originally granted plaintiff's motion for summary judgment on Claim Five, determining that an ambiguous contract existed and the contract should be construed against Coors as the drafter. See id. at 412. However, on Coors' motion for reconsideration, the

court denied summary judgment, reasoning that once a contract was determined to be ambiguous, the meaning of its terms was a question of fact for the jury under Colorado law. See id. at 427; 2 Aplt. App. at 591-92.

At the close of evidence, both parties moved for judgment as a matter of law. The motions were denied and the case was submitted to the jury by special verdict on two claims: (1) "Did Plaintiff prove that Defendant placed him in the Electropolish area of the Fabrication Services Department because of his race?" and (2) "Did Plaintiff prove that Defendant violated Personnel Policy R-9 by failing to recall him to a Laborer II job after he was laid off?" The jury found for Coors on the second claim, but determined that Mr. Stewart had been assigned because of his race and awarded him $60,000 in compensatory damages and $40,000 in punitive damages. 1 Aplt. App. at 474-75.

After judgment was entered on the jury verdict, Coors again moved for judgment as a matter of law under Fed. R. Civ. P. 50(b) arguing that Mr. Stewart had failed to show any evidence of racial animus, and his claim of race discrimination was time barred. The district court granted the motion, set aside the earlier judgment, and entered judgment in favor of Coors. This appeal followed.

Rule 50(b) motion

We review the grant of a Rule 50(b) motion de novo, reviewing all of the evidence in the record. See Reeves v. Sanderson Plumbing Products, Inc., No. 99-536, 2000 WL 743663, at *10 (U.S. June 12, 2000). All reasonable inferences are drawn in favor of the nonmoving party and this court does "not make credibility determinations or weigh the evidence." Id. at *11. Judgment as a matter of law is appropriate "'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'" Finley v. United States, 82 F.3d 966, 968 (10th Cir. 1996) (citation omitted). The district court granted judgment as a matter of law to Coors on two alternate grounds: Mr. Stewart's failure (1) to bring a claim within the requisite statute of limitations; and (2) to present any evidence that the assignment to electropolish was motivated by race. 2 Aplt. App. at 1222, 1224. Mr. Stewart asserts that there was sufficient evidence to support the verdict, and maintains that the district court erred in addressing the statute of limitations defense because Coors failed to raise that issue in its Rule 50(a) motion.

In our review of the sufficiency of the evidence claim, we assume that Mr. Stewart met his burden of proving a prima facie case of racial discrimination and

the claim properly went to trial. [1] On the merits, the burden shifting framework of McDonnell Douglas is largely irrelevant and the issue is whether the adverse employment action was motivated by race. See Sanchez v. Philip Morris, Inc. , 992 F.2d 244, 246 (10th Cir. 1993). This "'burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves , 2000 WL 743663, at *6 (quoting Texas Dep't of Community Affairs v. Burdine , 450 U.S. 248, 253 (1981)). The plaintiff can meet this burden through the combination of a prima facie case and the presentation of "sufficient evidence to find that the employer's asserted justification is false." Id. at *9. Having assumed that a prima facie case was shown, we review the record to determine whether Mr. Stewart presented sufficient evidence that Coors' stated justification was pretextual.

At trial, Coors demonstrated that Mr. Stewart's assignment was based upon the recommendation of Mr. Ray Evans. Mr. Evans, an African-American and the lead worker in electropolish, spoke with Mr. Sielsky, the electropolish supervisor, and recommended that plaintiff be assigned to electropolish. Mr.

---

[1]The district court denied summary judgment on this claim because, at the pre-trial stage, Coors had failed to "proffer a non-discriminatory reason for Stewart's assignment to the electropolish area." 1 Aplt. App. at 406. Our assumption in this case does not imply that an assignment from one job to another within the same company department will ordinarily be sufficient to constitute an "adverse" employment action.

Evans testified that his motivation for making this recommendation was to protect Mr. Stewart's job security because electropolish was less likely to be affected by layoffs than other areas of the fab shop. 2 Aplt. App. at 677. He also testified that Mr. Stewart knew about the recommendation. Id. at 678. This testimony was corroborated by Mr. Wheeler, the department manager, who testified that plaintiff was assigned to electropolish because of the recommendation of Mr. Evans and "because we had the need at the time." Id. at 889-90.

Mr. Stewart failed to show that these reasons were pretextual. First, the circumstances surrounding the assignment do not raise the slightest inference of discrimination. Mr. Stewart's hours, benefits and wages were not adversely affected, and with the exception of Mr. Evans, Mr. Stewart was the only African-American among the several non-minority workers in the electropolish area.

Second, the isolated racial comments which Mr. Stewart attempts to use as proof of racial discrimination are unrelated to the electropolish assignment. As this court recently noted, "anecdotal evidence of discrimination should only be admitted if 'the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand.'" Heno v. Sprint/United Management Co., 208 F.3d 847, 856 (10th Cir. 2000) (citation omitted). None of the comments in this case were tied to the alleged adverse employment action.

Of the several comments, one was made about five years prior to Mr. Stewart's assignment to electropolish and the employee was ordered to refrain from any further such remarks. A later comment by employee Kenny Hall was highly inappropriate but it resulted in Mr. Hall's suspension from work. The only comment which was even attributable to either of the two decision-makers responsible for Mr. Stewart's assignment was a 1995 comment by Mr. Sielsky as to whether "another employee was dumb enough to do [Mr. Stewart's] job in electropolish." 2 Aplt. App. at 742. Even assuming that this comment was racially motivated, we note that it was made some three years after Mr. Stewart's assignment to electropolish and is not probative of Mr. Sielsky's motivations in 1992.

After a thorough review of the record, we agree with the district court that, even when viewed in the light most favorable to the plaintiff, "[t]here is a dearth of evidence that Mr. Wheeler and/or Mr. Sielsky assigned or placed Mr. Stewart in the electropolish area because of his race." 2 Aplt. App. at 1224. Mr. Stewart has failed to offer sufficient evidence to prove that Coors' stated reasons for the assignment were pretextual.

> [A]n employer [is] entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that

no discrimination had occurred.

Reeves, 2000 WL 743663, at *9.  Therefore,    the grant of judgment as a matter of law was appropriate.  [2]

## Express Contract Claim

Mr. Stewart claims that the district court erred in submitting his express contract claim to the jury, rather than granting him judgment as a matter of law. We review de novo the questions of contract ambiguity and the denial of a motion for judgment as a matter of law, viewing the evidence and inferences therefrom in the light most favorable to the nonmoving party.    See Electrical Distrib., Inc. v. SFR, Inc.  , 166 F.3d 1074, 1081-82 (10th Cir. 1999);    Baker v. Barnard Const. Co.  , 146 F.3d 1214, 1220 (10th Cir. 1998).

Coors Policy R-9 clearly provided laid off employees with a right of recall. See 1 Aplt. App. at 528 ("Employees on extended layoff have recall rights for a period of time equal to their [company] seniority, or one year, whichever is less.").  However, the policy also provided that employees who were subject to recall could "elect to receive supplemental unemployment benefit [sic] in lieu of reassignment or recall rights, after signing a waiver of their recall rights."    Id. at

---

[2]Given Mr. Stewart's failure to present sufficient evidence of racial animus, we need not address the statute of limitations or the issue of punitive damages.

529. Mr. Stewart elected this option and received $7,458 in supplemental unemployment benefits. In doing so, he signed a document entitled "Waiver of Recall Rights" which is at the heart of this contract claim. That document provided in relevant part:

> In consideration for receipt of the supplemental unemployment benefit and/or [sic] Employee waives all rights to recall after sixty days past the date of layoff and as set forth in Policy R-9. Employee understands that if he/she exercises his/her right of recall within 60 days of layoff he/she must re-pay [Coors] the full amount of the Supplemental Unemployment Benefit and the Service Bonus.
> . . . .
> I HAVE FULLY INFORMED MYSELF OF THE CONTENTS OF THIS WAIVER BY READING IT BEFORE I SIGN IT. I FURTHER UNDERSTAND THAT I GIVE UP MY RECALL RIGHTS BY SIGNING IT AND I SIGN IT VOLUNTARILY.

Id. at 524. Within 60 days after Mr. Stewart had been laid off, a laborer job became available. Coors recalled Mr. Hung Tran – an employee with less seniority than Mr. Stewart but who had not elected to receive supplemental benefits in lieu of recall – to fill this position. Id. at 201. At no time during the 60 day period did plaintiff learn of this position or attempt to exercise his right of recall.

Mr. Stewart contends that the language "Employee waives all rights to recall after sixty days past the date of layoff" clearly means that the waiver only

became effective on the 61st day. Therefore, his recall rights were still effective and Coors breached the contract by not alerting him to the job opening. Coors contends that either (a) an employee clearly waives all recall rights from day one, absent a revocation in the first sixty days, or (b) the contract is ambiguous and therefore was correctly submitted to the jury. See Anderson v. Eby, 998 F.2d 858, 865 (10th Cir. 1993) (meaning of the terms of an ambiguous contract is question for fact finder under Colorado law); Dorman v. Petrol Aspen, Inc., 914 P.2d 909, 912 (Colo. 1996) (same).

"A written instrument is ambiguous when it is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of a term." Ad Two, Inc. v. City & County of Denver, 983 P.2d 128, 130 (Colo. Ct. App. 1999). It is clear that the language of the Waiver form was "fairly susceptible to more than one interpretation" as to whether the waiver became effective immediately or only upon the 61st day. Dorman, 914 P.2d at 912. On the one hand, the Waiver speaks in language which implies that Mr. Stewart would retain his recall rights, i.e. "[e]mployee understands that if he/she exercises his/her right of recall within 60 days of layoff . . . ." However, Coors Policy R-9 specifically states that the supplemental unemployment benefit was given "in lieu of reassignment or recall rights, after signing a waiver of their recall rights," 1 Aplt. App. at 529, and the Waiver form itself stated that Mr.

- 11 -

Stewart "G[A]VE UP" his recall rights by signing. The evidence also demonstrated that Coors consistently applied its policy to mean that recall rights were waived from the moment of signing the form. Taking this evidence in the light most favorable to the plaintiff, the waiver was ambiguous and the district court did not err in denying the motion for judgment as a matter of law. The contract issue was properly submitted to the jury, which determined that Coors did not breach Policy R-9.

Failure to Promote Claim

Finally, Mr. Stewart argues that the district court improperly granted summary judgment to Coors on his failure to promote claims. We review the grant of summary judgment de novo, examining the factual record and any reasonable inferences therefrom in the light most favorable to the non-moving party. See Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995). A review of the record before the district court reflects uncontroverted evidence that management had a justifiable non-discriminatory reason for all of the promotions which Mr. Stewart failed to receive, i.e., the decision was based on seniority and there were more senior employees; Mr. Stewart did not have the requisite welding certifications or attendance record for the job; and a temporary moratorium on bidding for construction jobs kept Mr. Stewart – as well as all

other employees – from a new position. Mr. Stewart failed to produce any evidence from which a reasonable inference could be drawn that these non-discriminatory reasons were pretextual. Therefore, summary judgment was appropriate.

AFFIRMED.