FILED
United States Court of Appeals
Tenth Circuit

April 27, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARIO LACHICA,

    Plaintiff - Appellant,

v.

RUSSELL STOVER CHOCOLATES,
LLC,

    Defendant - Appellee.

No. 20-3119
(D.C. No. 5:19-CV-04044-SAC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Mario LaChica appeals from the district court's order granting summary

judgment in favor of Russell Stover Chocolates, LLC ("Russell Stover") on his

employment discrimination and retaliation action under Title VII of the Civil Rights

Act of 1964. *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## BACKGROUND

LaChica originally worked for Russell Stover from 2000 to 2005 as a machine operator at its Abilene, Kansas factory. During that time, he was the subject of several complaints by female co-workers of inappropriate conduct. He first received a written warning in July 2000 for "lewd or indecent behavior" after a female co-worker accused him of touching her face, grabbing her waist and arms, trying to kiss her, and squeezing her shoulders, leaving bruises. Aplt. App. vol. 1 at 103-04. In July 2002, LaChica received a written warning for "making sexually explicit gestures" after approaching two female employees and showing them "he had an erection." *Id.* at 105-06. In May 2003, a female co-worker complained that he "made sexual advances" toward her and grabbed her arm and breast. *Id.* at 107. And in March 2005, a female employee accused him of making inappropriate "woo woo type" sounds as she was bending over. *Id.* at 109. Russell Stover terminated LaChica's employment in June 2005 for not following a supervisor's instructions.

Over a decade later, LaChica applied for another job as a machine operator at Russell Stover's factory in Abilene. Supervisor Tracy Jacobs reviewed his application, conducted his interview, and offered him the job. Neither Supervisor Jacobs nor Human Resources Manager Janelle Rogers reviewed LaChica's prior personnel records before he was hired.

LaChica began his second stint with Russell Stover in February 2016. Supervisor Jacobs served as his direct supervisor and noted in the evaluations spanning his first year that he met the overall job expectations. However, she also

2

noted he tended to wander off and talk to co-workers, especially female employees. Another supervisor complained that LaChica often stopped in her production area to talk to female employees, distracting them from their work. Supervisor Jacobs addressed the concern with LaChica, and he agreed to cease such behavior.

In November 2017, a female co-worker complained that LaChica made an inappropriate comment about her physical appearance. She said that he asked if she was pregnant, and when she asked whether he was implying that she looked "fat," he said, "[A] little bit." *Id.* at 72. A month later, a female employee contacted Human Resources to ask about the status of other complaints about LaChica, including incidents in which he made comments about employees' breasts and told one co-worker to "[s]uck this" when she threatened to report him. *Id.* at 117.

In January 2018, LaChica received a written warning for the November incident and was required to sign a copy of the company's sexual harassment policy. But in July 2018, a female employee complained that he came up behind her and put his hands on her, making her uncomfortable. She added that he often "calls [her] baby," says "sexual things," and tries "to give his number to [her]." *Id.* at 121. A co-worker witnessed the incident, stating that LaChica grabbed the female employee by the waist with both hands, "got really close like he was going to kiss her," and "whispered something into her ear." *Id.* at 122. The witness stated that LaChica walked away but then returned, "got close again like he was going to kiss her," and said, "Okay have a good day baby." *Id.* The female employee "looked like she wanted to cry," and the witness encouraged her to report the incident. *Id.*

Plant Superintendent Byron Nienstedt investigated the complaint and, after meeting with LaChica, suspended him. However, after HR Manager Rogers reviewed LaChica's personnel files and discovered the prior harassment claims, she decided he should be terminated. Superintendent Nienstedt agreed, and HR Manager Rogers called LaChica the next day and told him he was terminated. Supervisor Jacobs was not consulted about, and did not provide input into, the termination.

LaChica filed the present action in June 2019. He alleged that Supervisor Jacobs, a white female, treated him and other Hispanic employees "differently than the white employees." *Id.* at 7. He alleged that she followed him around the factory, yelled at him for no reason, blamed him when he was not at fault, accused him of eating while working, and told him not to speak Spanish while on the job. LaChica alleged he tried to file a complaint in May 2018, and when Supervisor Jacobs "asked why he had been in the HR office," he said "he had a complaint about her that needed to be addressed." *Id.* at 8. He also alleged that "no investigation [was] done" about the July 2018 incident and that he was not "given a chance to communicate what had really happened." *Id.* LaChica ultimately claimed he was terminated because: (1) he is Hispanic; (2) he is Mexican; and (3) he complained about his supervisor.

Russell Stover moved for summary judgment, and the district court granted the motion. Applying the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), the court concluded that LaChica failed to show pretext for purposes of his discrimination claim and failed to show either a prima facie case or pretext for his retaliation claim. LaChica timely appealed.

4

## DISCUSSION

## I.       Standard of Review

"We review a grant of summary judgment de novo, drawing all reasonable inferences and resolving all factual disputes in favor of the non-moving party." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 968 (10th Cir. 2017) (internal quotation marks omitted). Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (internal quotation marks omitted). Unsubstantiated allegations do not create a genuine dispute. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## II.      Discrimination

LaChica first contends the district court erred in granting summary judgment for Russell Stover on his discriminatory discharge claim. We disagree.[1]

---

[1] LaChica asserts that he "suffered an adverse employment action" not only in termination but "also from [Supervisor] Jacobs['s] treatment of him." Aplt. Opening Br. at 14. The district court found he "effectively concede[d]" his claim regarding Supervisor Jacobs by limiting his arguments to his termination. Aplt. App. vol. 3 at 102. LaChica has not contested that determination, nor has he adequately argued how Supervisor Jacobs's treatment of him constitutes an adverse action. We therefore limit our analysis to his termination. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (noting we routinely "decline[] to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief").

Under Title VII, an employer may not discharge an employee based on race or national origin. 42 U.S.C. § 2000e-2(a)(1). Because LaChica has not identified any direct evidence of discrimination, the *McDonnell Douglas* framework applies. *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019). Under this framework, the plaintiff "has the initial burden of establishing a prima facie case of discrimination," *id.*, which requires showing "circumstances which give rise to an inference of unlawful discrimination," *DePaula*, 859 F.3d at 969-70 (internal quotation marks omitted). With a claim of discriminatory discharge, a plaintiff must show: "(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge." *Singh*, 936 F.3d at 1037 (internal quotation marks omitted). If a plaintiff makes this showing, "the burden shifts to the employer to assert a legitimate nondiscriminatory reason" for the discharge and then back to the plaintiff to show the "reason is merely a pretext." *Id.* (internal quotation marks omitted).

We assume, without deciding, that LaChica established a prima facie case.[2] *See Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017).

We next assess Russell Stover's reason for terminating LaChica. For this prong, an employer "does not need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that

___

[2] The district court concluded that LaChica established a prima facie case. Russell Stover disputes that conclusion but offers no substantive argument and, instead, confines its discussion of discrimination to the pretext prong.

6

the reasoning was applied in a nondiscriminatory fashion. Rather, [the employer] need only explain its actions against the plaintiff in terms that are not facially prohibited by Title VII." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224 (10th Cir. 2007) (citation and internal quotation marks omitted).

Russell Stover identified LaChica's pattern of sexually harassing conduct as the basis for his termination. LaChica, however, attempts to limit the basis for his termination to the July 2018 incident and objects under several rules of evidence to any consideration of the harassment allegations from 2000 through 2005. Aplt. Opening Br. at 14 n.3. He raises this argument only in a footnote, and we "routinely decline[] to consider arguments that are only raised perfunctorily in footnotes." *United States v. Walker*, 918 F.3d 1134, 1153 (10th Cir. 2019).[3] Moreover, he cites no authority showing that the rules addressing the admissibility of evidence in court restricted the evidence that Russell Stover could consider in terminating him. *See United States v. Banks*, 451 F.3d 721, 728 (10th Cir. 2006) (declining to address an argument unsupported by authority). Nor are we aware of any such authority. Accordingly, we conclude Russell Stover carried its burden of articulating a legitimate, nondiscriminatory reason for the termination.

---

[3] Although Russell Stover asserts that LaChica also waived this argument by not raising it in district court, he included his evidentiary argument in his brief opposing summary judgment, although, as Russell Stover correctly notes, he never explained "why [Russell Stover's] investigation and decision-making should be subject to the Federal Rules of Evidence," Aplee. Br. at 18 n.7.

Lastly, we consider whether LaChica established pretext by showing "that the proffered reason is factually false or . . . that a reasonable fact finder could deem [it] unworthy of credence" based on "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013) (internal quotation marks omitted). Evidence may include "prior treatment of [the] plaintiff," "the employer's policy and practice regarding minority employment," "disturbing procedural irregularities," and "the use of subjective criteria." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (internal quotation marks omitted). When assessing pretext, we do not "sit as a superpersonnel department that second-guesses the company's business decisions, with the benefit of twenty-twenty hindsight." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1059 (10th Cir. 2020) (internal quotation marks omitted).

In his first argument for pretext, LaChica disputes the validity of the July 2018 complaint and contends that "[t]o fire an employee for checking to see if a co-worker was okay or needed to wake up seems weak and implausible, especially after the co-worker had to be directed to file a report." Aplt. Opening Br. at 16. However, even in his alternate version of the incident, LaChica still engaged in unwanted physical contact by placing his "hand on [a female co-worker's] hip." *Id.* at 15. And although he notes that Supervisor "Jacobs indicated she had never seen [him] touch a female co-worker in an inappropriate manner," *id.* at 16, the records from his first term of employment, which HR Manager Rogers reviewed, included several complaints of inappropriate touching. LaChica also does not dispute the co-worker's

8

allegation in connection with the July 2018 incident that he often makes inappropriate comments, such as calling her "baby" and saying "sexual things." Aplt. App. vol. 1 at 121. Nor does he dispute that Russell Stover legitimately relied on the allegations that he made inappropriate comments to or about female co-workers in late 2017, including telling one co-worker she was overweight after inquiring if she was pregnant, openly remarking about employees' breasts, and telling another co-worker to "[s]uck this" when she threatened to report him. *Id.* at 117.

Ultimately, "the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (internal quotation marks omitted). LaChica has not shown that Russell Stover did not honestly believe the allegations in July 2018, and his attempt to present an alternate version of the incident and to question his co-worker's credibility does not show pretext. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) (holding the plaintiff failed to establish pretext where the defendant discharged him after investigating and crediting sexual misconduct allegations, even though the plaintiff presented evidence to the district court that the allegations may have been false).

LaChica next attempts to show pretext by arguing that "[w]hite employees were treated much better than [him], and not terminated." Aplt. Opening Br. at 14. But he identifies no similarly situated employee with a comparable work history who was not terminated. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160,

9

1167-68 (10th Cir. 2007) (noting a plaintiff can show pretext by establishing "the employer treated the plaintiff differently from other similarly-situated employees who violated work rules of comparable seriousness in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff").

LaChica also alleges no disparate treatment by HR Manager Rogers, who made the termination decision. Instead, he alleges "disparate treatment by [Supervisor] Jacobs and/or [Superintendent] Nienstedt." Aplt. Opening Br. at 5. But he admits Supervisor Jacobs did not play a role in his termination and even asserts she "disagreed with" the decision. *Id.* at 16. As for his allegation concerning Superintendent Nienstedt, who concurred with the termination decision, LaChica relies on an affidavit from Daniel Hernandez. However, the only reference in the affidavit to Superintendent Nienstedt is the assertion that Hernandez and LaChica "would often speak to each other in Spanish for non-work related conversations and [Supervisor] Jacobs or [Superintendent] Nienstedt would reprimand [them] for it and tell [them] to speak in English." Aplt. App. vol. 2 at 174. The affidavit does not state where or when Superintendent Nienstedt allegedly made such comments. And, as the district court noted, although Hernandez also averred that LaChica was treated rudely and scapegoated, the affidavit offered "little more than conclusory assertions that [did] not connect [Superintendent] Nienstedt to any of those actions" and was "lacking in factual detail[,] providing no dates, names[,] or circumstances." Aplt.

10

App. vol. 3 at 107.[4]  Therefore, at most, LaChica has identified stray remarks and "anecdotal evidence of discrimination" unrelated to his termination, which are insufficient to show pretext.  *Stewart v. Adolph Coors Co.*, 217 F.3d 1285, 1289 (10th Cir. 2000).

Finally, LaChica argues that the process by which he was terminated indicates pretext.  He asserts the investigation into the July 2018 incident "took less than 24-hours when it normally takes three days."  Aplt. Opening Br. at 16.  But HR Manager Rogers quickly determined she had all the information she needed, and LaChica offers no authority that required her to wait two more days before terminating him.  Although LaChica also claims pretext on the basis that Supervisor Jacobs was not consulted about the termination decision, he has not shown that the failure to consult his direct supervisor violated "a written company policy, an unwritten company policy, or a company practice" so as to indicate pretext.  *DePaula*, 859 F.3d at 970.

LaChica's claims, considered "as a whole," fail to show that Russell Stover's reason for terminating him was pretextual.  *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2004) (internal quotation marks omitted).  Accordingly, the district court properly granted summary judgment to Russell Stover on LaChica's claims of discriminatory discharge based on race and national origin.

---

[4] Although LaChica contends the district court improperly made a credibility determination regarding Hernandez's affidavit, the district court merely remarked—correctly—on the affidavit's minimal relevance to the pretext analysis.

11

## III. Retaliation

LaChica next contends the district court erred in granting summary judgment to Russell Stover on his retaliation claim. We are not persuaded.

Under Title VII, an employer may not discriminate against any employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). We again apply the *McDonnell Douglas* framework—the plaintiff must present a prima facie case of retaliation; the employer must then articulate a legitimate, nondiscriminatory reason for the adverse action; and the employee must show that the proffered reason is pretextual. *See Stover v. Martinez*, 382 F.3d 1064, 1070-71 (10th Cir. 2004).

For a prima facie case, a "[p]laintiff must show that (1) he engaged in protected opposition to discrimination; (2) [the employer] took action against him which a reasonable person would have found materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action." *Singh*, 936 F.3d at 1042. "Protected opposition can range from filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). For a causal connection, a plaintiff must show "that the decisionmakers took action against him out of a desire to retaliate for his [protected opposition]," which requires evidence that the decisionmakers knew of the protected opposition. *Singh*, 936 F.3d at 1042-43 (internal quotation marks omitted).

LaChica first claims that his complaints about unfair treatment by Supervisor Jacobs constituted protected opposition. Although he alleges that he complained

12

about Supervisor Jacobs to managers and attempted to complain to human resources, he never attributed Supervisor Jacobs's unfair treatment to his race or national origin. And although he complained directly to Supervisor Jacobs, LaChica could not recall whether he attributed her conduct to discrimination.[5]  For a complaint of unfair treatment to qualify as protected opposition, the complaint must allege that unfair treatment is based on some form of unlawful discrimination.  *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).  Because he offered no evidence that he reported Supervisor Jacobs's unfair treatment was based on his race or national origin, he has not shown that such complaints constituted protected activity.

LaChica also argues that, "under the facts of this case, a request for an interpreter or translator should be considered a protected activity."  Aplt. Opening Br. at 18.  Specifically, he contends that he requested a Spanish-language interpreter on several occasions, including during meetings with Supervisor Jacobs.  Although LaChica cites cases finding that a hearing-impaired employee's request for a sign-language interpreter was a protected activity under the Americans with Disabilities Act, he offers no authority to support his assertion that a request for a Spanish-language interpreter is a protected activity under Title VII.  Nevertheless, we need not decide this issue because the district court also rejected LaChica's interpreter

---

[5] Even if LaChica told Supervisor Jacobs that he believed she was mistreating him based on his race or national origin, she played no role in his termination, and there is no evidence HR Manager Rogers or Superintendent Nienstedt knew of the protected opposition.  *See Singh*, 936 F.3d at 1042-43 (noting a causal connection requires that the decisionmakers knew of the protected opposition).

argument on two alternative grounds: (1) he did not raise the issue in the pretrial order; and (2) he did not show a causal connection between his request for an interpreter and his termination since he did not show that HR Manager Rogers or Superintendent Nienstedt knew of the request for an interpreter. Aplt. App. vol. 3 at 112. LaChica does not challenge either of the two alternative grounds, and therefore, we affirm the district court's ruling. *See Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs.*, 569 F.3d 1244, 1252 (10th Cir. 2009) ("When an appellant does not challenge a district court's alternate ground for its ruling, we may affirm the ruling.").

Because LaChica failed to carry his burden of showing a prima facie case of retaliation, the district court properly granted summary judgment to Russell Stover on that basis. We therefore need not address the district court's alternative conclusion that LaChica failed to establish pretext.

## CONCLUSION

The district court's judgment is affirmed.

Entered for the Court

Nancy L. Moritz
Circuit Judge

14