**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 15 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BRANFORD DODOO,

     Plaintiff-Appellee,

v.

No. 99-6352

SEAGATE TECHNOLOGY, INC., a
Delaware corporation,

     Defendant-Appellant.

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CV-98-1421-C)**

---

Gary C. Pierson (Sam R. Fulkerson, Scott A. Briggs, with him on the briefs) of
McAfee & Taft, Oklahoma City, Oklahoma, for Defendant-Appellant.

Emmanuel E. Edem of Norman, Edem, McNaughton & Wallace, Oklahoma City,
Oklahoma, for Plaintiff-Appellee.

---

Before **BALDOCK** and **McWILLIAMS**, Circuit Judges, and **SHADUR**, District
Judge.[*]

---

**SHADUR**, District Judge.

---

[*]    The Honorable Milton I. Shadur, Senior United States District Judge
for the Northern District of Illinois, sitting by designation.

Branford Dodoo ("Dodoo") sued Seagate Technology, Inc. ("Seagate"), charging that Seagate's denial of his applications for promotion to no fewer than nine different jobs during 1997 stemmed from several types of discrimination-- discrimination based on his age, race and national origin--in violation of state and federal law.  Before trial the district court granted summary judgment for Seagate on a host of Dodoo's claims:  on all those arising under the Oklahoma Anti-Discrimination Act, on all federal claims based on two of the promotion decisions and on Dodoo's Age Discrimination in Employment Act ("ADEA") claims based on three other promotion turndowns.

Dodoo's surviving claims were tried before a jury.  After a six day trial, the jury found in Seagate's favor as to all remaining claims relating to five of the seven surviving promotion decisions, but as to the other two it returned a verdict in Dodoo's favor, finding that Seagate had discriminated against Dodoo on the basis of his age in violation of ADEA and his race in violation of Title VII by failing to promote him to the "Program Manager" and "Product Line Manager" positions.

Seagate appeals those last two determinations, arguing that it is entitled to judgment as a matter of law because there was insufficient evidence to support (1) the jury's findings of intentional age and race discrimination, (2) the damages awards and (3) the finding that Seagate willfully violated ADEA.  Seagate also

contends that it is entitled to a new trial because (1) the testimony of Dodoo's former supervisor Dr. Randy Clark ("Clark") was improperly admitted at trial, (2) the concurrent trial of all of Dodoo's claims created an impermissible "aggregation bias" and (3) the district court rejected one of Seagate's proposed jury instructions and erred in several of its other instructions--those relating to the elements of a prima facie case, to pretext and to punitive damages.

We have jurisdiction pursuant to 28 U.S.C. §1291. Finding no error in the rulings or judgment of the district court, we affirm.

Background

Seagate designs, manufactures and markets hard disc drives for computer systems. In 1997 Dodoo, who has an MBA degree in addition to his extensive engineering experience, had been with Seagate for 16 years and was then employed at its Oklahoma City facility as a Staff Application Engineer, a grade 31 position. Dodoo is African American and was 46 years old during the relevant time period.

In May 1997 Dodoo applied for a promotion to a recently vacated Program Manager position. Decisionmaker Jay Watson ("Watson") selected David Koelsch ("Koelsch"), a 30-year old white male, to fill the position. Watson testified that he did so because he considered Koelsch to be a future "star" at Seagate, too valuable to lose to a job offer from his old company. At the time he

was promoted, Koelsch held a grade 28 position and had been with Seagate for approximately two months. When Watson selected Koelsch he downgraded the Program Manager position from grade 32 to grade 30, saving the company $15,000 per year in salary.

Seagate's Employee Handbook contained promotion guidelines stating that employees such as Koelsch were not eligible for promotion during their first year of employment. Thus Watson had to obtain approval from Human Resource Manager Lee Johnson ("Johnson") to promote Koelsch.

There was conflicting evidence as to whether Watson was aware that Dodoo had applied for the Product Manager position. Dodoo testified (and the jury was of course entitled to credit) that Watson had told him that he was the leading candidate for the position. Watson testified to the contrary: that he did not know that Dodoo had applied for the position when he made his decision, and that he never reviewed the applicant file compiled by the Human Resources Department.

As for the Product Line Manager position, that was a newly created spot that was posted for applications on June 17, 1997, just two days after an opening in position 97E0618 ("position 618") had been posted. Less than a month later (on July 15) an opening in position 97E0715 ("position 715") was also posted. Dodoo put in an application for each of the three positions.

Dodoo interviewed with Buck Cole ("Cole") for position 618 (the first of the three spots that had opened up) on June 18. During that interview Dodoo agreed to Cole's proposal that he instead take the Product Line Manager position that had just been posted. So another applicant was selected for position 618 on July 16. Cole also told Dodoo that he need not interview for position 715 because of his pending promotion to the Product Line Manager position. Cole signed the latter promotion of Dodoo on July 3, and Human Resources approved it on July 31. Then Cole filled position 715 with another candidate on September 15.

On December 12, with the other two positions having become unavailable, Dodoo received a letter from Human Resources stating that the Product Line Manager position for which he was selected had been withdrawn. Vice-President of High Performance Product Line Management Don Kelly ("Kelly") testified that his reason for canceling the position was that Seagate was "not hiring anybody" at that time because it was in the course of losing $600 million in business, constituting 45% of its sales, and because the new Product Line Manager position would have added unbudgeted overhead. By contrast, Human Resource Manager Johnson believed that only the Product Line Manager position was "frozen." In any event, the Product Line Manager position was never filled.

At stated earlier, at trial the jury returned verdicts in favor of Dodoo on his ADEA and Title VII claims based on Seagate's failure to promote him to the

Program Manager and Product Line Manager positions. As to the first set of claims, the jury awarded Dodoo $15,000 in back pay, $50,000 in emotional distress damages and $250,000 in punitive damages. As to the second, the jury awarded Dodoo $12,000 in back pay, $75,000 in emotional distress damages and $400,000 in punitive damages. And as to both positions, the jury also found that Seagate had willfully violated ADEA.

Following the jury verdict, the parties agreed that because the two positions were successive chronologically, the backpay damages for the Product Line Manager position should be eliminated as duplicative, so that Dodoo should be awarded only the $15,000 in back pay for the Program Manager position. In accordance with the jury's finding of Seagate's willful violation of ADEA, the parties further agreed that the $15,000 backpay award should be doubled to $30,000. In lieu of front pay, the parties also agreed that Dodoo should be promoted to a Grade 32 position within 30 days. Finally, pursuant to the cap on compensatory and punitive damages imposed by 42 U.S.C. §1981(a), the district court ordered that Dodoo could recover no more than $300,000 in compensatory and punitive damages for the entire lawsuit.

## Promotion to Program Manager

As to Seagate's assertion of entitlement to judgment as a matter of law on Dodoo's claims related to the Program Manager position, such cases as Beck v.

Northern Natural Gas Co., 170 F.3d 1018, 1021 (10th Cir. 1999) teach that "[w]hen a jury verdict is challenged on appeal, our review is limited to determining whether that verdict is supported by substantial evidence when the record is viewed in the light most favorable to the prevailing party." We may not substitute our judgment for that of the jury or usurp the jury's exclusive functions of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence and reaching ultimate conclusions of fact (United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1226 (10th Cir. 2000) and cases cited there).

Seagate insists that Dodoo produced insufficient evidence from which the jury could conclude that Seagate's assertedly lawful reasons for its decision to promote Koelsch rather than Dodoo were pretextual. But given the conflicting testimony over whether Watson was aware that Dodoo had applied for the position when he decided to hire Koelsch, the jury was entitled to credit Dodoo's version. Moreover, because Dodoo had 16 years' experience as against Koelsch's two months with Seagate when Dodoo applied for the promotion, the jury could reasonably infer that Dodoo was more qualified for the position and disbelieve Watson's explanation that Koelsch was a "key employee" who he feared would leave Seagate to work for a competitor. And the statements in Seagate's Handbook that employees such as Koelsch could not be promoted until they had

worked at Seagate for at least one year, so that Koelsch's promotion was highly irregular, could reasonably be viewed as bolstering that determination.

In sum, there is clearly substantial evidence of pretext on Seagate's part, in turn supporting the jury's determination that the real reasons behind Seagate's actions in denying Dodoo the Program Manager promotion were race and age discrimination. That aspect of the jury's verdict must be affirmed.

Promotion to Product Line Manager

Seagate focuses differently on Dodoo's claim of intentional race and age discrimination in its withdrawal of the Product Line Manager position. On that score Seagate argues that Dodoo failed to establish a prima facie case because that position was never filled. Even if it loses in that respect, Seagate contends there is insufficient evidence to show pretext in Seagate's proffered explanation that the position was withdrawn because of a hiring freeze generated by business losses.

As an initial matter, we note that the familiar McDonnell-Douglas ping-pong analysis is unnecessary at trial: Instead the ultimate test is whether plaintiff has produced enough creditable evidence to persuade the trier of fact that defendant acted with discriminatory intent and that such intent caused plaintiff's injury (Stewart v. Adolph Coors Co., 217 F.3d 1285, 1288 (10th Cir. 2000); Furr v. Seagate Tech., Inc., 82 F.3d 980, 985 (10th Cir. 1996)). Hence we proceed

directly to that inquiry, rather than addressing the intermediate issue of whether Dodoo established a prima facie case at trial.

First Seagate argues that Dodoo offered no evidence to controvert its assertion that the newly created Program Line Manager position was withdrawn because of a hiring freeze. But Dodoo showed that during the same time frame six others were promoted within the Product Line Management department in Oklahoma City and that a substantial number of positions were filled in Seagate's Minneapolis and Moorepark, California facilities. And to underscore that contrast, Human Resource Manager Johnson testified that the Product Line Manager position was the only job affected by the claimed hiring freeze.

By way of explanation, Seagate points to the Product Line Manager job as a new unbudgeted position, while the other jobs actually filled were existing budgeted positions. But Dodoo produced not only the just-mentioned testimony that the authorized Product Line Manager post was the only one affected by the so-called hiring freeze but also evidence that job freezes and promotions were never tied together. All of that, when augmented by the fact that the post was withdrawn only after the other two positions to which Dodoo could have been promoted were filled, suffices for a reasonable jury inference that Seagate's explanation was unworthy of credence and hence that Dodoo's promised promotion was withdrawn for discriminatory reasons. Accordingly this other

aspect of the jury verdict must also be affirmed.

### Testimony of Dr. Randy Clark

Next Seagate argues that it was reversible error to allow the testimony of Dodoo's former supervisor Clark because he had no involvement in any challenged decision, nor did any decisionmaker rely on Clark's input in making a challenged decision. Because that objection was interposed at trial, we review the district court's ruling to allow Clark's testimony under an abuse of discretion standard (Acrey v. American Sheep Indus. Ass'n, 981 F.2d 1569, 1575 (10th Cir. 1992)). We will not overturn the trial court unless it has made "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment" (Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 992 (10th Cir. 1999)).

Clark testified both to the content of Dodoo's performance appraisals that he had filled out and to Dodoo's being the top applications engineer for Seagate's Oklahoma City facility. Seagate urges that testimony was both irrelevant and unfairly prejudicial because none of Clark's appraisals was used by any of the decisionmakers for the challenged decisions. But that misses the point that Clark's testimony was relevant to whether Dodoo was qualified for the positions for which he applied. Finally, Clark testified to the organizational structure of Seagate, information helpful to the trier of fact in understanding the case.

In sum, Clark's testimony was clearly relevant, and the trial judge was

entirely justified in finding that its probative value outweighed any prejudicial effect on Seagate. It cannot be said that the admission of that testimony was an abuse of discretion.

"<u>Aggregation Bias</u>"

Seagate attempts to draw upon the statistical phenomenon known as "aggregation bias" to challenge both Dodoo's advancement of multiple claims at trial and, relatedly, the trial court's refusal to submit one of Seagate's requested jury instructions. Aggregation bias is a phenomenon that may occur when individual events are considered as a group--when there is insufficient similarity between those events to imply that the fact they all came out the same way was other than aleatory, but when a factfinder nonetheless attributes one cause to all of the events based on a cumulative impression, rather than separately determining the cause of each event.

Seagate did not object at trial to Dodoo's alleged "aggregation strategy." That being so, <u>United States v. Ivy</u>, 83 F.3d 1266, 1287 (10th Cir. 1996) (citations, internal quotation marks and punctuation marks omitted) states the test:

> The failure to object to the introduction of evidence is deemed a waiver of the objection absent plain error. A plain error is one that is obvious or seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Accord, <u>McEwen v. City of Norman</u>, 926 F.2d 1539, 1545 (10th Cir. 1991) and cases cited there.

In this instance Seagate complains of the trial court's permitting Dodoo to introduce evidence as to all seven of Seagate's challenged promotion decisions at one trial. As Seagate R. Br. 9 would have it, "when multiple claims are brought in a single lawsuit there is an inherent danger that the jury will simply conclude that unlawful discrimination existed based on multiple adverse decisions, even when evidence of causation and unlawful intent is lacking."

But any challenge to Dodoo's joinder of all of his claims against Seagate in one trial can scarcely equate to an assertion of plain error: It is of course the common and preferred method of litigation in the federal courts for obvious reasons of judicial economy--particularly where, as here, the joined claims share common issues of law and fact (see Fed. R. Civ. P. 18(a)). Moreover, Seagate's position reflects an impermissible distrust of the jury system. Here the jury instructions and the verdict form required the jury to make separate findings for each claim under each challenged promotion decision. Indeed, the proof of the pudding was in the eating: Seagate prevailed on all claims related to five of the seven challenged decisions, while Dodoo won on the other two--providing the best possible proof that the jury considered each claim separately.

Seagate nonetheless contends it is entitled to a new trial because the trial court refused its proffered instruction on aggregation bias. We review a district court's refusal to give a requested jury instruction under an abuse of discretion

-12-

standard (<u>Thomas v. Denny's, Inc.</u>, 111 F.3d 1506, 1509 (10th Cir. 1997)). Here Seagate's proposed instruction was extraordinarily prolix and, from a substantive point of view, was properly viewed as simply cumulative of the already-given instructions that called for the jury to consider each claim separately.

Other Jury Instructions

Seagate advances three other objections to the district court's jury instructions. In that regard "[w]e review de novo...the question of whether the instructions, taken as a whole, properly conveyed the applicable law and focused the jury on the relevant inquiry" (<u>Suiter v. Mitchell Motor Coach Sales, Inc.</u>, 151 F.3d 1275, 1285 (10th Cir. 1998)).

First Seagate objects to the jury instruction as to the fourth element of a prima facie discrimination case. To be sure, the typical articulation of such elements where preferential treatment is at issue is (1) that plaintiff is a member of a protected class, (2) that he was qualified for the position sought, (3) that he was rejected and (4) that the position was filled by someone who was not a member of the protected class (<u>Thomas</u>, 111 F.3d at 1510). But that formulation obviously does not fit all of Dodoo's claims now at issue, and <u>Furnco Constr. Corp. v. Waters</u>, 438 U.S. 567, 577 (1978) typifies the many cases that counsel "[t]he method suggested in <u>McDonnell Douglas</u> for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic."

Here the jury was told that the fourth element of any of Dodoo's prima facie claims of race and national origin could be established by a determination:

> that the position (a) remained open to be filled by a nonminority; or (b) was to be filled with plaintiff, but was later withdrawn while substantially similar promotions of nonminorities were not withdrawn.

Seagate complains wrongly that such an instruction "effectively directed a verdict for Dodoo by tailoring the fourth element of his prima facie cases to fit his specific factual allegations." That is just a variant of Seagate's wrongheaded argument that simply because the Product Line Manager position was never filled, Dodoo is foreclosed from recovery on that claim.

After all, the laws that bar employment discrimination are intended to protect against any type of adverse employment decision motivated by a statutorily forbidden discriminatory intent. And that principle applies with equal force to (1) such an adverse decision that discriminatorily favors an employee who is not a member of a protected class over another employee who is and (2) such an adverse decision to break an employment promise to a member of a protected class because that person is such a class member--and in that latter respect, one way in which that discriminatory intent can manifest itself is by eliminating the promised position.

If then the jury found (as it plainly could from the evidence) that the promotion for which Dodoo was approved was canceled but that no other

promotions involving comparable salary increases, duties and departments were canceled during the same time period,[1] that finding--together with the other elements of Dodoo's prima facie case--would just as plainly permit the jury to draw the reasonable inference of unlawful discrimination. Hence the district court's instruction was entirely in order.

Seagate's next contention, that the district court's instruction on pretext was erroneous, may be disposed of easily. On that score Seagate asserts that the district court erred in telling the jury that evidence of pretext may include "prior treatment of plaintiff," an assertion predicated on the premise that the quoted language impermissibly referred to Clark's testimony. But that just-quoted phrase from the instruction was taken verbatim from our decision in Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999) and is neither misleading nor an incorrect statement of law (see Suiter, 151 F.3d at 1285, upholding a jury instruction that adopted language from an earlier Tenth Circuit opinion). When the district court's instruction on pretext is read as a whole--as we must--it conveys the governing law on that subject both properly and clearly.

---

[1] Seagate complains that the district court failed to instruct the jury on what constituted "substantially similar" promotions. But "substantially similar" is sufficiently clear on its own to permit a jury to apply it sensibly--and moreover, the trial court limited the evidence of other promotions and job postings to those it found both relevant and not unduly prejudicial on the issue whether there was a job freeze at the time the Product Line Manager position was cancelled.

Seagate finally attacks the instruction on punitive damages. Seagate urges that while the district court's instruction correctly stated the standard of misconduct, it failed to include an instruction on the legal basis for imputing liability for such misconduct to Seagate, as assertedly required by <u>Kolstad v. American Dental Ass'n</u>, 527 U.S. 526 (1999) (decided after the jury's verdict but before entry of final judgment).

Even if this were an appropriate case for retroactive application of a newly announced rule of law (a question we need not decide), <u>Kolstad</u> is inapplicable to the present facts. As <u>Deters v. Equifax Credit Information Servs.</u>, 202 F.3d 1262, 1271 (10th Cir. 2000) has explained, <u>Kolstad</u> involved vicarious liability, so that its agency principles do not bear on the situation here, where punitive damages are imposed on the basis of direct liability. <u>Kolstad</u> simply has no impact on the instructions given by the district court.

<u>Damages Awards and Finding of Willfulness</u>

Seagate lastly argues that it is entitled to judgment as a matter of law on damages and on the jury's finding that it willfully violated ADEA because there was insufficient evidence to support the jury's determinations on those issues. As we have already said, our review of jury findings is limited to determining whether the findings are supported by substantial evidence (<u>Wulf v. City of Wichita</u>, 883 F.2d 842, 874 (10th Cir. 1989)). As for damages issues in

particular, Wulf, id. at 874-75 (internal citation and punctuation marks omitted) teaches:

> Additionally, absent an award so excessive or inadequate as to shock the judicial conscience and raise an irresistible inference that passion, prejudice or another improper cause invaded the trial, the [jury's] determination of the amount of damages is inviolate.

And the adequacy of evidence to support punitive damages is a question of law reviewed de novo (Fitzgerald v. Mountain States Tel. & Tel. Co., 68 F.3d 1257, 1262 (10th Cir. 1995)).

As to the jury's award of lost earnings, Seagate argues that Dodoo suffered no actual losses, both because the Product Line Manager job was cancelled and because the Program Manager position was downgraded from grade 32 to 30, with its salary reduced to $15,000 less than Dodoo's. But we have already explained that the district court, with the parties' agreement, eliminated the duplicative aspect of a backpay award for both promotions. Because that knocked out any backpay component for the Product Line Manager position, Seagate's objection to that damage element is rendered moot.

As for the remaining backpay award (for Seagate's failure to promote Dodoo to the Program Manager position), the evidence sufficed for a jury finding that but for Seagate's unlawful discrimination the position would not have been downgraded to grade 30 (it will be recalled that downgrading took place in the context of awarding the position to newcomer Koelsch, for whom grade 30 was a

-17-

step up from grade 28).  It was surely reasonable for the jury to infer that if Dodoo had gotten the spot instead, that job would have remained at grade 32 (as originally posted), with Dodoo receiving the corresponding increase in salary.

Next Seagate disputes the jury's award of emotional distress damages. Dodoo testified that he has trouble sleeping and wakes up with his heart pounding, not knowing where he is.  In addition, he testified that he worked very hard to position himself well in America after immigrating to this country, but has felt that he was not recognized for his efforts.  After having worked for Seagate for 18 years, Dodoo feels it was too late for him to start his career over with another employer.  Dodoo has sought the counsel of his wife, ministers and friends to deal with these issues.  All of that evidence forms a sufficient basis to support the jury's award of emotional distress damages in the amount of $125,000.

Third, Seagate challenges the jury's award of punitive damages, essentially repeating its argument about the punitive damages instruction.  But again the Kolstad doctrine is inapplicable:  Because Dodoo sought punitive damages under a direct liability theory instead, he needed to show malice or reckless indifference to his federally protected rights on the part of the managers whom Seagate designated to implement the company's anti-discrimination policy (see Deters, 202 F.3d at 1271).

In that respect Dodoo produced evidence that manager Johnson in Seagate's Human Resource Department--the department charged with enforcing that policy--was guilty of reckless indifference. For one thing, after Johnson initially suggested that Dodoo take advantage of Seagate's job posting system, he then approved the promotion of Koelsch over Dodoo in the face of the Seagate Handbook's prohibition against the promotion of an employee such as Koelsch, who had been in his current position for just two months--far less than the one year Handbook requirement.

As for the other denied promotion--the Product Line Manager position--when Vice President of Product Line Management Kelly decided to withdraw that job for what the jury found to be unlawful discriminatory reasons, the Human Resources Department sent Dodoo a letter notifying him of the withdrawal. Its knowledge of that withdrawal was coupled with Johnson's acknowledgment that he was told the reason was because the Product Line Manager position was "frozen" and that he understood that no other promotions were "frozen" at that time. Taken together, that evidence supports a jury finding that Johnson acted at least with reckless indifference to Dodoo's protected rights, so that punitive damages were warranted.

Finally, Seagate contests the jury's finding that it willfully violated ADEA. That "willfulness" determination requires a showing that Seagate either knew, or

evinced reckless disregard toward the question whether, its conduct was prohibited by ADEA (<u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 614 (1993), citing <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 126 (1985)).  This opinion's earlier discussion as to punitive damages scotches Seagate's argument to the contrary.  Indeed, the jury was also entitled to infer from Seagate's pretextual explanations for its actions that it knew its conduct was unlawful.

<u>Conclusion</u>

This opinion has been overly extended because of the sheer volume of Seagate's attempted onslaughts on the result below--but every one has come up empty.  We AFFIRM the judgment of the district court and deny Seagate's alternative requests (1) for judgment as a matter of law and (2) for a new trial.