**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 27 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CARA L. FERENCICH,

  Plaintiff-Appellant,

v.

JAMES MERRITT; OKLAHOMA
COUNTY BOARD OF COUNTY
COMMISSIONERS,

  Defendants-Appellees,

  and

THOMAS FERGUSON,

  Defendant.

No.  02-6222
(D.C. No. 01-CV-567-H)
(W.D. Okla.)

**ORDER AND JUDGMENT**  *

Before  **EBEL** , **PORFILIO** , and **McCONNELL** , Circuit Judges.


After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Cara Ferencich appeals the district court's grant of summary judgment on her retaliation claim, its ruling admitting evidence of her tongue and eyebrow piercings, its instruction to the jury, and the jury verdict on plaintiff's sexual harassment claims in favor of defendants. We affirm.

## I. Background

Plaintiff worked at the Oklahoma County Court Clerk's Office from July 2000 until June 2001. She alleges that almost immediately after she started working at the court, her supervisor, Thomas Ferguson, began making sexual comments to her, sending her sexually explicit e-mails, and calling her at home. There was evidence that, at least initially, plaintiff reciprocated in some of the sexual banter. On January 26, 2001, when plaintiff and Ferguson were alone in a courtroom, Ferguson locked the door and then twice placed plaintiff's hand on his clothed genitals. She testified that when she pulled away, he began to unzip his pants and directed her to look at his penis. After plaintiff made it clear to Ferguson that she was not interested, they left the courtroom together. A witness who saw plaintiff that Friday afternoon said that she looked upset.

On the following Monday, January 29th, plaintiff reported Ferguson's conduct to James Merritt, who was the Personnel Director and Assistant Chief

Deputy. Merritt interviewed plaintiff and one of her coworkers, took notes, and asked them to submit written statements. After the meeting, Merritt asked Department Head Debra White whether she had any personal knowledge of other incidents involving Ferguson. White responded with a note that six years earlier she had received a complaint from an employee that Ferguson had suggested meeting in the stairwell so he could show her "what she was missing." Aplt's App., Vol. II at 469.

On January 30th, Merritt reported plaintiff's complaint to Patricia Presley, who was the Court Clerk, and Tim Rhodes, who was the Clerk's Chief Assistant. Rhodes was directed to investigate the incident. On the same day, Ferguson's supervisory duties were temporarily suspended and he was directed to stay away from plaintiff. Plaintiff was transferred to a training position as a judge's clerk, which was a transfer she had sought before the incident with Ferguson.

Between January 31st and February 16th, Rhodes interviewed plaintiff, Ferguson, and five other women who had information regarding plaintiff's claim. Rhodes documented his interviews thoroughly. *See id.*, Vol. I at 91-108. On February 16, 2001, Rhodes reported to the Court Clerk that the evidence showed Ferguson had made inappropriate comments to plaintiff both directly and through e-mail messages, but that the evidence regarding the sexual assault was inconclusive. *Id.* at 55. Based on Rhodes' report, the Court Clerk permanently

demoted Ferguson, placed him under the direct supervision of Merritt, and required him to undergo sexual harassment training. Merritt was instructed to oversee Ferguson's rehabilitation from April 15 until June 30, 2001. *Id.*, Vol. III at 542-47, 562.

On February 20, Rhodes met with plaintiff to explain what actions were being taken in response to her complaint. During the meeting, plaintiff indicated that she was satisfied by the speed of the investigation and the fact that Ferguson would no longer be a supervisor. *Id.*, Vol. I at 108. On the same day, plaintiff filed an Equal Employment Opportunity complaint alleging sexual harassment. *Id.* at 38-39.

Approximately twice a month plaintiff was required to work in the county court clerk's office where Ferguson still worked. Merritt arranged the office so that plaintiff's desk was as far as possible from that of Ferguson and directed Ferguson to avoid any contact with plaintiff. On April 13, 2001, plaintiff complained to Merritt that she was uncomfortable working in the same office as Ferguson. Plaintiff alleged that when she complained to Merritt, he offered to place her desk in the middle of the street. Merritt denied making this comment, but acknowledged that he did state that she could be terminated if she refused to work where she was needed.

On May 4, 2001, plaintiff was again required to work in the county court clerk's office for the day. Ferguson was instructed to use a door farthest away from plaintiff, and when he approached an area of the counter that was too close to plaintiff, Merritt directed someone in the office to speak with him about it.

Although Ferguson eventually attended the sexual harassment training arranged for him on April 25, 2001, Merritt's notes show that Ferguson expressed resistance to the training on several occasions. Further, after plaintiff filed her complaint, an investigation revealed an incident in which Ferguson had exposed himself to one of the department heads. Ferguson's employment was terminated in May 2001. On June 5, 2001, plaintiff submitted her two-week notice that she was leaving her position at the court.

Plaintiff brought this action against Ferguson, the Board of County Commissioners (County), and Merritt, alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, and deprivation of her civil rights in violation of 42 U.S.C. § 1983. Specifically, her amended complaint alleged (1) a sexual harassment claim against Ferguson; (2) a § 1983 claim that the County had a policy of tolerating sexual harassment which deprived her of her right to equal protection; (3) a Title VII claim against the County for sexual harassment and retaliation; and (3) a § 1983 claim that Merritt failed to remedy the sexual harassment after plaintiff complained. *Id.* at 27-34.

After filing the complaint, plaintiff and Ferguson entered into a settlement agreement, and Ferguson was dismissed from the case. The remaining defendants filed a motion for summary judgment, which was granted in part and denied in part. The district court granted summary judgment in favor of the County on plaintiff's retaliation claim because she had not been subjected to an adverse employment action after making her complaint. In so ruling, the district court found that plaintiff had not been constructively discharged. The district court denied summary judgment on the Title VII claim against the County and the civil rights claims against the County and Merritt.

Before trial, plaintiff filed several motions in limine. Although plaintiff raised Rule 412 of the Federal Rules of Evidence as a basis for some of her requests, her motion to preclude evidence of her pierced tongue and eyebrow was based only on its lack of relevance and the prejudice it would engender. *See* Aple's Supp. App. at 2, 4. Defendants argued that plaintiff's display of her tongue stud was relevant to whether she had flirted with Ferguson. The district court ruled that the information was relevant and would be permitted, subject to an objection during trial. *Id.* at 25. At trial, the defense was allowed to elicit information about plaintiff's piercings.

Plaintiff presented evidence that Ferguson had sexually harassed other women when they worked at the County Court Clerk's Office, and that some of

these women had informed a low-level supervisor. The County and Merritt presented evidence that they had no knowledge of Ferguson's behavior before plaintiff's complaint, that the other women who had been sexually harassed did not formally report it, and those who spoke informally with a supervisor asked that the information be kept private. The jury returned verdicts in favor of the County and Merritt, and plaintiff filed this appeal.

## II. Summary Judgment on Retaliation Claim

Plaintiff argues that the district court erred in granting summary judgment sua sponte on her retaliation claim. Defendants argue that their motion for summary judgment included the retaliation claim, and thus the district court did not rule sua sponte. We review a grant of summary judgment de novo, applying the same standards as those used by the district court. *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1209 (10th Cir. 2003).

After reviewing defendants' motion, we conclude it included a request for summary judgment on plaintiff's retaliation claim against the County. A claim of retaliation requires a showing that an employee was subjected to an "adverse employment action" in retaliation for exercising a protected right. *Id.* at 1212. In their summary judgment motion, defendants argued that plaintiff failed to show such an adverse employment action occurred, discussing both plaintiff's post-complaint transfer and her resignation. Even if the district court's ruling had

been sua sponte, however, the error would have been harmless because the trial evidence did not show an adverse employment action against plaintiff.

Most of the actions identified by plaintiff in her brief are not "adverse employment actions" as that term is defined in our cases. *See* Aplt's Br. at 15. An adverse employment action requires employer conduct that is "materially adverse" to an employee's job status, such as termination, demotion, or an unwelcome reassignment with significantly different duties. *Wells*, 325 F.3d at 1212-13. Plaintiff's transfer to the courtroom clerk training position was at her request, and thus was not adverse. Her employment termination was also at her own request, after Ferguson was fired, and the evidence of her treatment after she filed the EEOC complaint did not raise a triable issue as to whether she was constructively discharged. Although plaintiff argues that her pay was "docked," Aplt's Br. at 15, the evidence showed only that she used some paid leave time after the incident. Thus the district court correctly granted judgment in favor of the County on plaintiff's retaliation claim.

## III. Sufficiency of the Evidence

Plaintiff argues next that the evidence was not sufficient to support the jury's verdict in favor of the County and Merritt on her sexual harassment and civil rights actions. In reviewing a jury verdict, we determine only whether it is supported by substantial evidence when the record is viewed most favorably to the

-8-

prevailing party. *Bangert Bros. Constr. Co. v. Kiewit Western Co.*, 310 F.3d 1278, 1292 (10th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence." *Id.* (further quotation omitted). "The jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in evidence, and reaching ultimate conclusions of fact." *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 959 (10th Cir. 2002) (further quotation omitted).

To hold the County liable for Ferguson's conduct, plaintiff was required to show that the constitutional violation resulted from a county policy or custom, such as a policy of tolerating sexual harassment. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). Merritt could be held liable under § 1983 for Ferguson's sexual harassment only if he directed the conduct or had actual notice of the conduct and acquiesced in it. *See Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992).

With regard to the County's liability under Title VII for Ferguson's conduct in his supervisory capacity, the Supreme Court has held that

> An employer is subject to vicarious liability to a victimized employee
> for an actionable hostile environment created by a supervisor with
> immediate (or successively higher) authority over the employee.
> When no tangible employment action is taken, a defending employer

-9-

may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

Here, the evidence showed that the County had a written policy against sexual harassment. *See* Aplt's App., Vol. I at 65-66. This policy was contained in the employee handbook, and employees were required to verify that they read the handbook. Further, in May 2000, the Oklahoma Supreme Court's policy prohibiting sexual harassment and setting out the grievance procedure for reporting and investigating claims was broadcast via computer to the employees of the County Court for at least nine days. *Id.* at 76-81. It is also undisputed that plaintiff did not use the grievance procedure before her January 29, 2001 complaint, at which time her employer implemented the investigation which resulted in Ferguson's demotion and eventual termination.

Defendants also presented evidence that they were unaware of any ongoing sexual harassment before plaintiff made her complaint. Merritt testified that when he began work at the court in January 1997, he reviewed the personnel files of all supervisors and department heads, and that there was no evidence in the files that would alert him to a problem. *Id.*, Vol. III at 534-35. Further, the

women who had prior problems with Ferguson did not make formal reports, and requested that the matters be kept private.

There was evidence that both Merritt and the County took immediate and effective action in response to plaintiff's complaint. Merritt immediately reported plaintiff's allegation of sexual harassment to his supervisor, who initiated an investigation. Ferguson's supervisory duties were suspended, and he was required to have no contact with plaintiff. Plaintiff was given a transfer that she had requested. After the investigation was completed, the Court Clerk permanently demoted Ferguson and required him to undergo sexual harassment training. When further incidents of sexual harassment by Ferguson were discovered, he was terminated. This evidence is more than sufficient to support the jury's conclusion that (1) the County did not have a policy of tolerating sexual harassment, (2) the County was not liable for Ferguson's acts under Title VII, and (3) Merritt did not direct or acquiesce in Ferguson's sexual harassment of plaintiff.

## IV. Federal Rule of Evidence 412

Plaintiff argues that the district court violated Rule 412 by denying her motion in limine and allowing evidence regarding her tongue and eyebrow piercings. Defendant argues that plaintiff's pretrial motion in limine and trial objections did not challenge this evidence under Rule 412, and that, in any event,

the evidence was admissible. Assuming, without deciding, that Rule 412 applies to the facts of this case, we consider plaintiff's argument.

As amended in 1994, Rule 412 generally precludes evidence of an alleged victim's "sexual behavior" or "sexual predisposition" in civil and criminal proceedings involving allegations of sexual misconduct. Fed. R. Evid. 412(a). The Advisory Committee Notes explain that evidence of sexual predisposition includes the victim's "mode of dress," and specify that the rule applies in sexual harassment suits. *See* Fed. R. Evid. 412, Advisory Committee Notes to 1994 Amendments.

A party seeking to introduce Rule 412 evidence must file a motion detailing the evidence and its purpose no later than 14 days before trial. Fed. R. Evid. 412(c)(1)(A). "Before admitting evidence . . . the court must conduct a hearing in camera and afford the victim and parties a right to attend and be heard." Fed. R. Evid. 412(c)(2). Such evidence is admissible only if "its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Fed. R. Evid. 412(b)(2).

To show that they were not on notice that plaintiff was being harassed before she complained, defendants offered evidence that plaintiff appeared to reciprocate Ferguson's flirting. Within this context, there were several references to plaintiff's pierced tongue and eyebrow.

The first reference was made voluntarily by plaintiff. In response to the question whether she ever stuck out her tongue at Ferguson, plaintiff replied "[t]he only time that he saw my tongue was when he asked me if I had a tongue ring and he told me to open my mouth, and so I did." Aplt's App., Vol. II at 455. When defendants' counsel followed up with the question whether plaintiff did, in fact, wear a tongue ring while working at the court, plaintiff's attorney objected on the ground of relevance. *Id.* The court overruled the objection, and the defense elicited testimony that plaintiff wore an eyebrow and tongue ring while working at the court, but that she had taken them out for a job interview. *Id.* at 455-56. Plaintiff's counsel objected again after defense counsel asked plaintiff whether she thought there were sexual connotations associated with a tongue ring, and plaintiff answered that she did not. *Id.* at 455. Counsel did not mention Rule 412 at any time.

A final reference to plaintiff's tongue ring occurred during Ferguson's testimony. Ferguson testified that he thought the sexual conduct with plaintiff was consensual, and that plaintiff had flirted with him over the previous few months. As an example of plaintiff's flirting, Ferguson indicated that plaintiff stuck her tongue out at him, and that to him, the sexual purpose of a tongue ring was "obvious." Aplt's App., Vol. III at 637.

-13-

Rule 103 of the Federal Rules of Evidence provides that error may not be predicated on a ruling admitting evidence unless there was "a timely objection or motion to strike appear[ing] of record." Fed. R. Evid. 103(a)(1). Here, plaintiff's motion in limine regarding the admissibility of evidence of her piercings cited only Rules 402 and 403, and her attorney did not mention Rule 412 when objecting at trial. We therefore conclude that plaintiff waived her Rule 412 objection to the admission of evidence regarding her tongue and eyebrow ring.

Nonetheless, we must determine whether the admission of this evidence was plain error. *See Dodoo v. Seagate Tech., Inc.*, 235 F.3d 522, 529 (10th Cir. 2000). "A plain error is one that is obvious or seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (further quotation omitted). Further, "to reverse a district court judgment on account of an evidentiary ruling, [plaintiff] must make a clear showing she suffered prejudice, and the ruling was inconsistent with substantial justice or affected her substantial rights." *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 773 (10th Cir. 1999) (quotation omitted).

It is obvious that defendants did not submit the notice required by Rule 412 before trial. The district court did, however, hold a pretrial hearing in which the parties argued the relevance of the evidence and the potential for prejudice to plaintiff. Ferguson's testimony that he interpreted plaintiff's act of showing him

-14-

her tongue ring as flirting, because of its perceived sexual use, was relevant to both the issue of whether his sexual conduct was "unwelcome," and whether Merritt and the County should have known that plaintiff was being harassed. *See Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 855-56 (1st Cir. 1998) (upholding ruling that evidence concerning plaintiff's allegedly flirtatious behavior toward the alleged harasser was admissible to determine welcomeness). Further, it is not clear that evidence of plaintiff's piercings was in any way prejudicial to her. Based upon our review of the record, we conclude that plaintiff has not made a sufficient showing to warrant reversal.

## V. Jury Instruction

Lastly, plaintiff complains that the district court erred in instructing the jury that to hold Merritt liable under § 1983, "plaintiff must prove by a preponderance of the evidence that Mr. Merritt knew of and consciously acquiesced in the sexually harassing behavior of Mr. Ferguson towards the plaintiff by failing to take reasonable measures to abate the behavior." Aplt's App., Vol. III at 766. Plaintiff argues that the instruction incorrectly limited Merritt's knowledge to Ferguson's behavior towards plaintiff, without considering his knowledge of Ferguson's prior conduct towards others.

We review the district court's refusal to modify the instruction for an abuse of discretion. *See Coletti*, 165 F.3d at 771. Plaintiff's argument is, in essence,

-15-

that in light of past incidents with Ferguson, Merritt "should have known" that sexual harassment was occurring but failed to stop it. We have held that § 1983 liability cannot be imposed upon a supervisor under such circumstances. *See Woodward*, 977 F.2d at 1399. Liability under § 1983 required that Merritt have actual knowledge that Ferguson was violating plaintiff's constitutional rights, in order to establish a "deliberate, intentional act by the supervisor." *Id.* Thus, the district court did not abuse its discretion in instructing the jury.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED. The motion to file a supplemental brief and supplement the record on appeal is denied.

Entered for the Court

David M. Ebel
Circuit Judge

-16-