**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LEONA ROMERO,

      Plaintiff-Appellant,

v.

THE CITY OF ALBUQUERQUE,

      Defendant-Appellee.

No. 05-2017
(D.C. No. CIV-03-805-JC/RHS)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **McKAY**, and **BRORBY**, Circuit Judges.

---

Leona Romero appeals from the district court's entry of judgment in favor

of The City of Albuquerque (City) on her breach of contract claim and her gender

discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e to 2017.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

## I. Background

In 1982, Ms. Romero began working for the City's Solid Waste Management Department (Department), initially as a driver in the residential division, then as an administrative aide and a senior office assistant. She received temporary promotions to various positions, including acting Code Inspector in the residential division. A Code Inspector, also referred to as a Code Enforcer, is the liaison between customers and the Department concerning compliance with municipal ordinances governing solid waste containers and enclosures. In 2001, the City advertised to fill the position of Solid Waste Code Inspector in the Department's commercial division. Ms. Romero applied for the job, but the City promoted Rudy Rivera instead. Mr. Rivera had worked for the City for over sixteen years, initially as a Residential Collections Driver and then, for the fifteen years until his promotion, as a Commercial Collections Driver.

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Ms. Romero filed this action. She alleged that the City violated her rights under Title VII by promoting Mr. Rivera because he was male and less qualified than her for the Code Inspector position. Her breach of contract claim was premised on an employment contract arising from the City's merit system ordinance (MSO) and personnel rules and regulations (PRR).

The case proceeded to a bench trial. At the close of Ms. Romero's case, the City moved for judgment as a matter of law, which the district court granted

on both claims. The court found that the City promoted Mr. Rivera for nondiscriminatory reasons and that Ms. Romero failed to show that those reasons were a pretext for gender discrimination. The court also found that the City's decision to promote Mr. Rivera instead of Ms. Romero did not breach the MSO. Ms. Romero appeals from that judgment.

## II. Standard of Review

Ms. Romero's suggestion that de novo review applies to our review of the district court rulings is based on the faulty premise that the district court ruled pursuant to Fed. R. Civ. P. 50(a). Rule 50(a) applies to jury trials. Here, the district court entered judgment on partial findings pursuant to Fed. R. Civ. P. 52(c), which applies to bench trials. When a district court enters a judgment pursuant to Rule 52(c), we review its findings of fact "for clear error and its legal conclusions de novo. A finding of fact is clearly erroneous if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." *Nieto v. Kapoor*, 268 F.3d 1208, 1217 (10th Cir. 2001) (quotation and citation omitted).

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

### III.  Breach of Contract Claim

Ms. Romero argues that the City breached an employment contract by using subjective criteria when making its decision to promote Mr. Rivera rather than the objective criteria contemplated by the City's MSO and PRR.  The relevant provision of the MSO states, in pertinent part, that "[e]very effort shall be made to fill vacant positions in the city with the best qualified candidate."  Aplt. App. at 74 (setting forth Albuquerque, N.M., Code of Ordinances ch. 3, art. 1, § 3-1-7).  Several sections of the PRR apply here.  Section 102.1 provides that "[v]acant positions in the City will be filled with the best-qualified candidate as determined by the selection committee or hiring supervisor."  Aplt. App. at 62.  Section 102.3 provides that "[s]election for promotion and transfer is made on the basis of education, experience, training, skills and other abilities."  *Id.* at 63.  Similarly, § 101.4 provides that "[e]xperience, education, training, skills and other abilities, as well as specific position requirements and the prior employment history of the applicant will be considered in appraising individual qualifications."  *Id.* at 61.

New Mexico law provides that, when a merit system is adopted, the employment contract between a municipality and an employee in a covered position "shall be subject to the provisions of the ordinance and rules and regulations issued pursuant to the ordinance."  N.M. Stat. § 3-13-4(C).  The district court appears to have concluded that a contract existed but that the City

-4-

did not breach it. Assuming that there was an enforceable contract, an issue we need not decide, we have little trouble concluding that the City adhered to its terms. The MSO requires only that every effort be made to select the best qualified candidate, and the rules set forth the proper considerations. Consistent with PRR § 102.1 and as discussed in more detail below, *see* Part IV, *infra*, the City determined Mr. Rivera was the best qualified candidate for the Code Inspector position based on his particular experience and skills, the specific position requirements, and his prior employment history, all proper considerations under PRR §§ 101.4 and 102.3.

### IV. Title VII Claim

In resolving Ms. Romero's Title VII claim, the district court applied the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), which "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases," *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). The district court found that Ms. Romero had met her initial burden under *McDonnell Douglas* of establishing a prima facie case by showing that, as a female, she is a member of a protected class, that she was qualified for the promotion and was not promoted, and that the City promoted Mr. Rivera, a male, instead.

Ms. Romero's prima facie case established a rebuttable presumption that the City unlawfully discriminated against her and shifted the burden of production

to the City to provide a legitimate, nondiscriminatory reason for its hiring decision, *see Hicks*, 509 U.S. at 506-07. The district court found that the City presented two such reasons. First, Mr. Rivera's temperament with customers was better suited to the Code Inspector position than Ms. Romero's on-the-job temperament, Aplt. App. at 10, ¶ 7, which included hanging up on a customer on at least one occasion, *id.* at 8, ¶ 11. Second, Mr. Rivera's "lengthy experience interfacing with business customer representatives, albeit in a driver capacity, had well prepared him for the unique concerns of the Commercial section . . . [which] would be of greater benefit in the Commercial Code Enforcer position than Plaintiff's Acting Code Enforcer experience in the Residential section would be." *Id.* at 10, ¶ 8. Upon this showing, the *McDonnell Douglas* framework disappeared, and Ms. Romero assumed the burden of persuading the trier of fact that the City's proffered nondiscriminatory reasons for promoting Mr. Rivera instead of her were mere pretext for intentional gender discrimination, *see Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142-43 (2000); *Hicks,* 509 U.S. at 510-11. The district court found that she failed to show the City's reasons for promoting Mr. Rivera were pretextual.[1]

---

[1]    Although the district court set forth its view that the City had not intentionally discriminated against Romero under the "Conclusions of Law" section of its decision, we note that "[t]he ultimate finding of whether there was intentional discrimination against a protected class is a question of fact." *Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 247 (10th Cir. 1993).

On appeal, Ms. Romero first suggests that, because the district court entered judgment before the City put on any witnesses, she did not have an adequate opportunity to rebut the City's nondiscriminatory reasons. However, in arguing against the Rule 52(c) motion, Ms. Romero's counsel stated that "the evidence kind of blends, both my evidence in my prima facie case and the evidence that I would put on for pretext after the burden shifted back to the City. They are all kind of melded together in the initial case." Aplt. App. at 219. Thus, counsel admitted that he put on his rebuttal evidence as part of his case-in-chief and cannot now argue to the contrary. Moreover, counsel has not identified what additional evidence of pretext he might have provided. Accordingly, granting the City's motion and entering judgment at the close of Ms. Romero's case did not unfairly prejudice her.

On the merits of her Title VII claim, Ms. Romero contends that the City's proffered nondiscriminatory reasons for hiring Mr. Rivera instead of her were merely pretextual. Ms. Romero's burden is one of persuasion. *See Hicks*, 509 U.S. at 508. She may establish pretext "directly by persuading the court that a discriminatory reason more likely motivated the [City] or indirectly by showing that the [City's] proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). The indirect showing, however, "is simply one form of circumstantial evidence that is probative of intentional discrimination"—it does not compel a judgment in her favor. *Reeves*,

530 U.S. at 146-47. Rather, a showing that the City's reasons are unworthy of credence, together with her prima facie case, permits an inference that the City is "dissembling to cover up a discriminatory purpose." *Id.* at 147.

We conclude that the district court's finding that the City's proffered nondiscriminatory reasons were not pretextual has sufficient factual support in the record and is not clearly erroneous. Several of the City's employees testified that interpersonal skills were integral to the Code Inspector position. There was also testimony that Mr. Rivera interacted better with customers, whereas Ms. Romero had hung up on a customer on at least one occasion and gotten into a physical altercation with another employee. Finally, there was testimony that Mr. Rivera's fifteen years of daily personal contact with Code Inspectors and customers on his commercial route provided him with experience that, in the City's view, was preferable to Ms. Romero's experience as an acting Code Inspector in the residential section where customer contact occurred primarily by telephone.

Ms. Romero raises a number of arguments in support of her position that the City's proffered nondiscriminatory reasons for hiring Mr. Rivera are pretextual. In order to address her arguments properly, it is necessary to review the hiring process that the Department used in selecting Mr. Rivera.

Judy Atkins, the Department's Personnel Director, screened applicants for minimum qualifications and then sent a list of those applicants to the Department's Superintendent of Collections, Ira Gibson. Mr. Gibson selected the

applicants that would be interviewed, and a three-person committee then conducted the interviews. Each person on the committee selected three of the applicants as finalists. According to one of the committee members, Donna Gonzales, Ms. Romero appeared on each of the lists but Mr. Rivera appeared on only two. Ultimately, the head of the committee, Theresa Baca, who was then Mr. Gibson's girlfriend and is now his wife, selected Mr. Rivera and passed the recommendation along to Mr. Gibson.

After receiving Ms. Baca's recommendation, Mr. Gibson authored a short memorandum to Michael Trujillo, the Director of the Department, stating that he based his decision to recommend Mr. Rivera on the responses of applicants during oral interviews, a blueprint interpretation, and attendance records. He also wrote that Mr. Rivera's "unconditional concern for the department is also a major factor." Aplt. App. at 60. When asked at trial if he relied on his personal knowledge of Ms. Romero's interaction with customers and co-workers, he replied, "That had nothing to do with it." *Id.* at 199:25. In a follow-up answer, he clarified that he did not make the hiring decision, the committee did, and he "went with the recommendation of the committee." *Id.* at 200:13.

Ms. Romero argues that the City's reliance at trial on temperament is a post hoc justification that is inconsistent with the reasons set forth in Mr. Gibson's memorandum to Mr. Trujillo and his comment that Ms. Romero's temperament had nothing to do with the decision to promote Mr. Rivera. Therefore, she

concludes, it supports an inference of pretext under *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (explaining that pretext can be shown by inconsistencies or contradictions in an employer's proffered nondiscriminatory reasons). The flaw in this argument is that Mr. Gibson testified he had virtually no role in the hiring decision. He merely passed along the committee's recommendation without conducting any independent review. Despite questioning Ms. Gonzales, who was on the committee, Ms. Romero elicited no testimony regarding whether temperament was a factor in the hiring decision. Accordingly, there is insufficient evidence that the City's reliance on temperament is a post hoc justification that supports an inference of pretext.

Ms. Romero suggests that the lack of any disciplinary action concerning her alleged conduct toward customers supports an inference of pretext. We are not persuaded. The City is not required to show it had previously disciplined Ms. Romero before it could consider her temperament as a legitimate, nondiscriminatory reason for not promoting her.

Ms. Romero argues that the City's failure to follow its own written policy is evidence of pretext under *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1168 (10th Cir. 1998) (explaining that pretext may be supported by an employer's failure to follow its own criteria for a reduction in force). First, she contends that Mr. Gibson failed to conduct any review of the applicants' personnel files prior to making his recommendation to Mr. Trujillo. She argues that this is contrary to

PRR § 102.3, which provides that "[t]he personnel file/records of the applicants will be made available to the interviewing and hiring supervisor," Aplt. App. at 63. Contrary to her argument, this provision requires only that the files be made available to the hiring supervisor, not that the supervisor is obligated to review them. Second, she points to the City's alleged failure to abide by other provisions of the MSO and the PRR that require the City to hire the best qualified candidate. As discussed above, the City based its decision on appropriate MSO and PRR criteria. Therefore, this argument lacks merit.

One part of the interview process consisted of a blueprint exercise that required applicants to diagram an appropriate vehicle route when picking up trash from a dumpster at a local business. According to the testimony of Ms. Romero and Ms. Gonzales, one could not complete the routing exercise without choosing a route that would violate safety or zoning regulations. Yet Mr. Rivera's flawed performance on the exercise was one of the reasons given for selecting him. Apparently, Ms. Romero would have us conclude that reliance on Mr. Rivera's performance on the blueprint exercise was pretextual because it was not a legitimate factor for distinguishing between applicants–every route resulted in a violation. We cannot agree that the mere lack of an answer that did not violate safety or zoning regulations supports an inference that the City promoted Mr. Rivera because he is male.

Ms. Romero next focuses on qualifications. She argues that Mr. Rivera's experience as a driver in the commercial sector was insufficient for him to meet the advertised minimum qualification of two years of "increasingly responsible code enforcement inspection experience," Aplt. App. at 23. We reject this argument. "Employers are given wide discretion in setting job standards and requirements and in deciding whether applicants meet those standards." *Hickman v. Flood & Peterson Ins., Inc.*, 766 F.2d 422, 425 (10th Cir. 1985). "As long as the qualifications offered by the employer are reasonable and have been consistently applied to all applicants for the position, . . . there is no reason for the fact finder to supplant the employer's list of qualifications with its own." *York v. AT & T Co.*, 95 F.3d 948, 954 (10th Cir. 1996). Ms. Atkins, who screened applicants for minimum qualifications, testified that, in her opinion, Mr. Rivera's experience as a driver was sufficient because he interfaced with commercial customers and commercial Code Inspectors on a daily basis. Aplt. App. at 108:9-25. It was within Ms. Atkins's discretion to draw this conclusion, and she consistently applied this measure to all of the other drivers in the commercial division who applied, *see id.* at 109:4-14. The district court found that Mr. Rivera was minimally qualified, and based on our review of the record, we cannot say that this finding is clearly erroneous.

Ms. Romero also contends that she was better qualified because she had experience as an acting Code Inspector in the Residential Division whereas

Mr. Rivera had experience only as a driver in the Commercial Division, and she had completed a variety of training in leadership, public relations, communications, and business administration. This argument lacks merit. "The courts may not act as a super personnel department that second guesses employers' business judgments. Accordingly, minor differences between a plaintiff's qualifications and those of a successful applicant are not sufficient to show pretext." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308-09 (10th Cir. 2005) (quotation and citation omitted). Instead, "the disparity in qualifications must be overwhelming." *Id.* (quotation omitted). The evidence shows that the City could have believed in good faith that Mr. Rivera was better qualified than Ms. Romero. Further, the evidence did not support a finding that she was overwhelmingly qualified.

Ms. Romero points to evidence of other discriminatory acts by the City as support for a finding of pretext. Testimony about other discriminatory acts is relevant to pretext. *See Dodoo v. Seagate Tech., Inc.*, 235 F.3d 522, 530-31 (10th Cir. 2000) (testimony by plaintiff); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990) (testimony by others). The evidence presented here, however, consists only of a statement by Ms. Atkins that another applicant for the Code Inspector position had filed a gender discrimination claim of some sort and Ms. Romero's testimony that she had previously complained about other incidents

of discrimination. These mere allegations are not convincing support for a finding of pretext in this case.

The final argument on Ms. Romero's Title VII claim that merits discussion is whether there is an institutional bias in the City in favor of males. In support, she points to the fact that only six of 160 drivers are female. Ms. Romero, however, did not present any evidence of what percentage of applicants for driver positions are women, which would be essential to determine whether the City hired a disproportionate number of men as drivers. She also points to Ms. Atkins's failure to provide any reason why an interview was extended only to one of six minimally-qualified female applicants, whereas almost all of the male applicants who met the minimum qualifications received interviews. There is no evidence to support the negative inference Ms. Romero would have us draw from Ms. Atkins's testimony. Mr. Gibson decided which applicants to interview, not Ms. Atkins, and there was no testimony from him on that subject. In any event, both of Ms. Romero's points are largely irrelevant in view of the fact that the City found Mr. Rivera to be more qualified than Ms. Romero and had a valid basis for its decision.

## V. Trial Rulings and Bias

Ms. Romero raises two additional points on appeal. First, she argues that the district judge erred by not permitting counsel to treat Ms. Atkins as a hostile witness. Second, she argues that the district judge was biased against her.

A trial judge has broad discretion to permit the use of leading questions when a party calls a witness who is an adverse party or identified with one. *See* Fed. R. Evid. 611(c); *United States v. Olivo*, 69 F.3d 1057, 1065 (10th Cir. 1995). The record reflects that Ms. Romero's counsel had called Ms. Atkins and questioned her at length on the subject of whether Ms. Romero was more qualified than Mr. Rivera when the judge suggested that he stop cross-examining her. Counsel then asked for permission to treat her as a hostile witness, which the judge denied. Our review of the record indicates that Ms. Atkins was not adverse to answering counsel's questions to the point that she should have been considered hostile. Furthermore, counsel was able to elicit additional information from Ms. Atkins and, even after the judge's ruling, continued to pose leading questions, *see, e.g.*, Aplt. App. at 136:6-8; 148:17-19; 150:25 to 151:4. Accordingly, we see no abuse of discretion in the district judge's denial of counsel's motion to treat Ms. Atkins as a hostile witness.

Ms. Romero also takes issues with a number of comments that, she alleges, show the district judge was biased against her. "Normally, a party alleging judicial bias should move for recusal, and must do so in a timely fashion." *United States v. Nickl*, 427 F.3d 1286, 1297 (10th Cir. 2005) (quotation omitted). Here, Ms. Romero did not move for recusal. Accordingly, we review her claim of bias for plain error, which is one that "affects substantial rights" and "seriously affects

the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1297-98 (quotation omitted).

At the beginning of the trial, the judge appeared to confuse the case at bar with another case. *See* Aplt. App. at 88:16-24. However, there is no indication that the confusion was more than momentary and does not evidence bias. Shortly thereafter, Ms. Romero's counsel asked whether he had to state for the record that there was no need to move all the stipulated documents into evidence. The judge replied, "Well, not unless you want to pay for that when you get a transcript." *Id.* at 93:16-17. Ms. Romero concludes that this comment indicated the judge already intended to rule against her. We disagree. The comment does not indicate an opinion about the case derived from an "extrajudicial source" or "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Rather, the judge's comment appears to indicate only a concern about unnecessary costs, and we decline to draw from it the conclusion that he had predetermined Ms. Romero would be the losing party and bear those costs.

Ms. Romero also points to the judge's comment that he "wouldn't want to be a garbage truck driver if [he] were a woman." Aplt. App. at 152:15-16. She contends that this shows the judge had an institutional bias that prevented him from inferring pretext from the City's alleged institutional bias. We are not persuaded. The judge's comment was made during a discussion of why there

-16-

were not more female drivers, which, according to Ms. Atkins, was probably because the job was dirty and hazardous, *id.* at 144:1-3. The judge's comment reflected this characterization and does not cause us to question his impartiality or the fairness, integrity, or public reputation of the proceedings.

Ms. Romero also finds bias in the judge's decision to disregard the testimony of Orlando Nichols because of his romantic relationship with her while relying on Mr. Gibson's testimony even though he was romantically involved with the head of the selection committee, Ms. Baca. In effect, Ms. Romero asks us to review the judge's credibility determinations and infer from them bias in the judge's findings. When a trial court's findings are based on credibility, we give them even greater deference than usual. *See Anderson*, 470 U.S. at 575. Ms. Romero has provided no reason to question the district court's decision to disregard the testimony of Mr. Nichols because of his relationship with a party to the case. Ms. Baca was not a party to the case; she only worked for the City. Mr. Gibson's relationship with her, therefore, does not raise the same concern of witness bias that prompted the district court's finding as to Mr. Nichols's credibility. Accordingly, we see no reason to doubt the impartiality of the district judge's findings insofar as they are based on Mr. Gibson's testimony.

Ms. Romero also points to the denial of her motion to treat Ms. Atkins as a hostile witness as evidence of the judge's bias. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at

555. Based on our view that the motion was properly denied and our rejection of the other bases for Ms. Romero's bias allegation, we see no evidence of bias in the denial of her motion.

The judgment of the district court is **AFFIRMED**.

Entered for the Court


Mary Beck Briscoe
Circuit Judge